John W. Davis, State Bar #200113
john@johnwdavis.com
LAW OFFICE OF JOHN W. DAVIS
501 W. Broadway, Suite 800
San Diego, CA 92101
Telephone: (619) 400-4870
Facsimile: (619) 342-7170

Attorney for Objector
Sarah McDonald

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

AMELIA FOOS, individually and on behalf of all others similarly situated,

Plaintiff,

v.

ANN, INC., a Delaware corporation doing business as Ann Taylor Retail, Inc.,

Defendant.

**CASE NO. 3:2011-cv-02794**

**OBJECTION TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR**

Date: December 10, 2012
Time: 10:30 a.m.
Judge: Hon. M. James Lorenz
Courtroom: Dept. 14 (5th Floor)
940 Front Street
San Diego, CA 92101

**TABLE OF CONTENTS**

I. INTRODUCTION .......... 1

II. THE RELIEF OFFERED IS INADEQUATE IN LIGHT OF AVAILABLE STATUTORY DAMAGES .......... 2

III. THE SETTLEMENT VALUE IS ILLUSORY .......... 3

IV. SETTLEMENTS OFFERING COUPONS WHICH OBLIGATE CLASS MEMBERS TO ENGAGE IN FURTHER BUSINESS TRANSACTIONS WITH THE SETTLING DEFENDANT ARE DISFAVORED .......... 5

V. ATTORNEYS' FEES .......... 7

VI. THE RELEASE IS OVERLY BROAD .......... 8

VII. THE MERE RIGHT FOR CLASS MEMBERS TO REQUEST EXCLUSION DOES NOT MITIGATE THE INADEQUATE RELIEF OFFERED TO CLASS MEMBERS .......... 9

VIII. ADDITIONAL OBJECTIONS .......... 9

IX. CONCLUSION .......... 9

## TABLE OF AUTHORITIES

**Cases**

*Acosta v. Trans Union, LLC*
243 F.R.D. 377 (C.D. Cal. 2007)........ 4

*Amchem Prods., Inc. v. Windsor*
521 U.S. 591 (1997)........ 1

*Bloyed v. General Motors Corp*
881 S.W.2d 422 (1994)........ 7

*Buchet v. ITT Consumer Fin. Corp.*
845 F.Supp. 684 (D. Minn. 1994)........ 5, 6

*Churchill Village v. General Electric*
361 F.3d 566 (9th Cir. 2004)........ 2

*Class Plaintiffs v. Seattle*
955 F.2d 1268, 1276 (9th Cir. 1992)........ 1

*Diaz v. Trust Territory of Pacific Islands*
876 F.2d 1401 (9th Cir. 1989)........ 1

*Dunleavy v. Nadler*
213 F.3d 454 (9th Cir. 2000)........ 1

*Figueroa v. Sharper Image Corp.*
517 F. Supp. 2d 1292 (S.D. Fla. 2007)........ 4

*Hanlon v. Chrysler Corp.*
150 F.3d 1011 (9th Cir. 1998)........ 1

*In re Bluetooth Headset Products Liab. Litig.*
654 F.3d 935 (9th Cir. 2011)........ 7

*In re Cendant Corp. Derivative Action Litigation*
232 F. Supp. 2d 327 (D.N.J. 2002)........ 2

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*
216 F.R.D. 197 (D. Me. 2003)........ 5

*In Re General Motors Corp. Pick-Up Fuel Tank Products Liability Litig.*
55 F.3d 768 (3d Cir. 1995) .......... 5

*In re Mexico Money Transfer Litig.*
267 F.3d 743 (7th Cir. 2001). .......... 6

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*
148 F.3d 283 (3d Cir. 1998) .......... 6

*In re Safeguard Self-Storage Trust*
2 F.3d 967 (9th Cir. 1993) .......... 3

*Khatib v. County of Orange*
639 F.3d 898 (9th Cir. 2011) .......... 3

*Kullar v. Foot Locker Retail, Inc.*
168 Cal. App. 4th 116 (2008) .......... 2

*Mirfasihi v. Fleet Mortgage Corp.*
356 F.3d 781 (7th Cir. 2004) .......... 1

*Molski v. Gleich*
318 F.3d 937 (2003) .......... 1, 9

*Ortiz v. Fibreboard Corp.*
527 U.S. 815 (1999).......... 9

*Pettway v. American Cast Iron Pipe Co.*
576 F.2d 1157 (5th Cir.1978) .......... 1

*Polar Int'l Brokerage Group v. Reeve*
187 F.R.D. 108 (S.D.N.Y. 1999) .......... 7

*Rothfarb v. Hambrecht*
649 F. Supp. 183 (N.D. Cal. 1986) .......... 8

*Staton v. Boeing*
327 F.3d 938 (9th Cir. Wash. 2003) .......... 8

*Synfuel Techs., Inc. v. DHL Express*
463 F. 3d 646 (2006) .......... 5, 7

*True v. Am. Honda Motor Co.*
749 F. Supp. 2d 1052 (C.D. Cal. 2010) .......... 3,7

*Zucker v. Occidental Petroleum Corp.*
192 F.3d 1323 (9th Cir. 1999) .......... 8

**Statutes**

28 U.S.C. § 1332(d) .......... 6

28 U.S.C. § 1453 .......... 6

28 U.S.C. §§ 1711-1715 .......... 6

28 U.S.C. § 1712(e) .......... 3

Cal Civ. Code § 1747 .......... 2, 3

**Rules**

Federal Rule of Civil Procedure 23(e) .......... 1, 3

**Treatises**

Geoffrey P. Miller & Lori S. Singer, *Nonpecuniary Class Action Settlements*, 60 LAW & CONTMP. PROBS. 97 (1997) .......... 5

Judge Thomas A. Dickerson, *Consumer Class Actions and Coupon Settlements: Are Consumers Being Shortchanged*?, ADVANCING THE CONSUMER INTEREST (Sept. 2000) .......... 11

Wright & Miller, Federal Practice and Procedure (3d ed.), Civil § 1797 .......... 2

**PLEASE TAKE NOTICE** that class member Sarah McDonald ("Objector"), by and through her undersigned counsel, intends to appear and be heard at the fairness hearing on December 10, 2012 at 10:30 a.m. in Department 14 of the United States District Court for the Southern District of California, located at 940 Front Street, San Diego, California 92101, to discuss the following objections:

## I. INTRODUCTION

Class action settlements require court approval for the protection of those class members whose rights may not have been given due regard by the negotiating parties. Federal Rule of Civil Procedure 23(e) requires court approval for the settlement of any class action. A settlement should be approved only if "it is fundamentally fair, adequate and reasonable." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992), *cert. denied*, 506 U.S. 953 (1992). "Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004). *See also Diaz v. Trust Territory of Pacific Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989) ("The district court must ensure that the representative plaintiff fulfills his fiduciary duty toward the absent class members").

Particularly close scrutiny is required under Rule 23(e) when the proposed settlement has been negotiated prior to class certification. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620-21 (1997) (holding that the rights of absent class members "demand undiluted, even heightened, attention in the settlement context"); *see also Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1169 (5th Cir.1978) (Pettway IV), *cert. denied*, 439 U.S. 1115 (1979) (the class action settlement process is "more susceptible than adversarial adjudications to certain types of abuse."). "Settlements that take place prior to formal class certification require a higher standard of fairness." *Molski v. Gleich*, 318 F.3d 937, 953 (2003) (quoting *Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000)).

As guardian of absent class members, the Court should independently evaluate the evidence in finding that the proposed *Amended Settlement Agreement and Release* ("Settlement Agreement") is "fair, adequate and reasonable." *See, e.g., Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116, 128 (2008). The parties seeking approval bear the burden of demonstrating the settlement's fairness. Wright & Miller, Federal Practice and Procedure (3d ed.), Civil § 1797. *See also In re Cendant Corp., Derivative Action Litigation*, 232 F. Supp. 2d 327 (D.N.J. 2002). They have failed to meet this burden.

## II. THE RELIEF OFFERED IS INADEQUATE IN LIGHT OF AVAILABLE STATUTORY DAMAGES

California Civil Code section 1747, upon which plaintiff's complaint is based, provides statutorily mandated damages for unlawful collection of personal information in connection with a credit transaction. The statute provides for damages of up to $250.00 for the first violation and $1000.00 for each subsequent violation. Cal Civ. Code §1747.08(e). Despite the availability of damages set by statute, absent class members stand to receive merely a coupon worth $15 or 20% off an in-store purchase at one of defendant's retail outlets. Moreover, as discussed below, restrictions placed upon coupon redemption further erode the purported value of this settlement to class members.

Additionally, the Court's review is further frustrated by an ambiguous notice provision concerning how defendant will apply the 20% discount.[1] For example, is the discount 20% off a single item, or 20% off an entire purchase comprised of multiple items? Without clarification, the Court is unable to undertake a bona fide analysis of the value of the proposed settlement. In determining the fairness, adequacy, and reasonableness of the proposed settlement the Court must consider the "strength of the plaintiffs' case," *Churchill Village v. General Electric*, 361 F.3d 566, 576 (9th Cir. 2004). The amount of available statutory damages is certainly a factor in determining the strength of plaintiff's case. According to plaintiff, there are at least 154,900 class members.[2] Assuming the maximum statutory damage award, that equates to a settlement value of

[1] Notice to Class Members, p. 2, ¶ 2; Amended Settlement Agreement and Release §§ 1.16, 2.3

[2] Plaintiff's Memorandum of Points and Authorities in Support of Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement ( Docket Entry 24-1, p. 19, line 7)

almost $155 million, yet here class members are left with coupons of dubious value.

In order to determine that a coupon settlement is fair, reasonable, and adequate for class members under Rule 23(e)(2) and 28 U.S.C. § 1712(e) , the Court "must discern if the value of a specific coupon settlement is reasonable in relation to the value of the claims surrendered." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1069 (C.D. Cal. 2010). "In ascertaining the fairness of a coupon settlement, the Court is to 'consider, among other things, the real monetary value and likely utilization rate of the coupons provided by the settlement.'" *Id.* at 1073 (quoting S.Rep. No. 109-14, at 31, reprinted in 2005 U.S.C.C.A.N. 3, 31). Here, the parties have failed to provide sufficient evidence that would allow this Court to make a reasoned assessment of the actual value of the settlement to the class members or of the value of the claims to be surrendered.

## III. THE SETTLEMENT VALUE IS ILLUSORY

The proposed "injunctive" relief is meaningless because it merely states that defendant will comply with existing law. The Settlement Agreement provides: "Ann Inc. agrees to comply with California Civil Code section 1747.08 on or before entry of the Preliminary Approval Order. Ann Inc.'s change in policies, practices, and procedures after the onset of the Action and before entry of the Preliminary Approval Order shall in no way expand or restrict the scope of California Civil Code section 1747.08, and is subject to any changes in California law."[3] The "injunctive relief" obtained by plaintiff is an agreement by defendant to obey the law – something which it is already obligated to do. Accordingly, the Court should afford no weight to the "injunctive" component of the settlement.

With regard to the damages component, the benefit offered is non-monetary. While the settling parties refer to the offered coupons as "Vouchers," if it looks like a duck, walks like a duck, and quacks like a duck, it must be a duck. *In re Safeguard Self-Storage Trust*, 2 F.3d 967, 970-74 (9th Cir. 1993). While the settling parties termed the offer to class members a "Voucher," the legal effect of the relief "is a question of function, not just labeling." *Khatib v. County of*

---

[3] Amended Settlement Agreement and Release § 2.1

*Orange*, 639 F.3d 898, 905 (9th Cir. 2011). Indeed, the proposed settlement may be accurately described as a "pure coupon" settlement of the type much maligned in recent years.[4] The Superior Court of California for the County of Los Angeles rejected a similar coupon settlement in September of this year. *See Schlesinger v. Ticketmaster*, Los Angeles Superior Court case number BC304565. An excerpt from the *Ticketmaster* order concerning the use of coupons as a settlement device is attached hereto as Exhibit A for the Court's convenience. Notably, the standards traditionally applied to coupon settlements have been more liberal in California state courts than in federal courts. However, as evidenced by the attached order, pure coupon settlements are losing favor even under the more lenient California standards.

Moreover, the nature and terms of the coupons offered under the proposed settlement agreement further underscore the illusory nature of the "benefit." First, defendant regularly distributes coupons of the type offered here. In fact, coupons offered to Ann Taylor credit cardholders are often more attractive than the coupons to be distributed pursuant to the proposed settlement. *See Declaration of Sarah McDonald in Support of Objection to Proposed Settlement, Exhibit A* filed herewith. Accordingly, the coupons offered pursuant to the proposed settlement do not represent real compensation to damaged class members, but merely a continuation of defendant's established promotions.

Second, the restrictive terms imposed on the settlement coupons further diminish any purported value. These restrictions include, but are not limited to[5]:

- Coupons are only valid for six months after issuance
- Coupons may not be used for online purchases
- Class members receive only one coupon regardless of the number of violations they incurred at the hands of defendant
- Coupons have no cash value

---

[4] *See Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1321 (S.D. Fla. 2007); *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 390-393 (C.D. Cal. 2007).

[5] Amended Settlement Agreement and Release § 2.3

- Class members may not receive cash back if their purchase is less than the value of the coupon being redeemed
- Coupons may not be applied to purchases pre-dating issuance of coupons – even if class member presents proof of purchase
- Coupons may not be used to purchase gift cards
- Coupons may not be combined with any other "discount program, promotional coupon or Voucher"

The last bullet point above is significant because, as described *supra* and in the *Declaration of Sarah McDonald*, **Ann Taylor routinely distributes coupons with the same or similar value as those offered here** as a condition of settlement. Accordingly, the offered coupons have little value (particularly in light of the short redemption period) because class members may use only one coupon during a set expiration period. Class members may use the coupon they usually receive in the mail, or they can use the coupon (which has the same or similar value) they receive from the settlement.

## IV. SETTLEMENTS OFFERING COUPONS WHICH OBLIGATE CLASS MEMBERS TO ENGAGE IN FURTHER BUSINESS TRANSACTIONS WITH THE SETTLING DEFENDANT ARE DISFAVORED

Settlements that offer coupons as relief are disfavored because of their questionable value to the class. *See, e.g., Synfuel Techs., Inc. v. DHL Express*, 463 F. 3d 646, 654 (2006) (noting that for many consumers, "the right to receive a discount [or coupon] will be worthless") (alteration in original) (quoting Geoffrey P. Miller & Lori S. Singer, *Nonpecuniary Class Action Settlements*, 60 LAW & CONTMP. PROBS. 97, 108 (1997)); *In Re General Motors Corp. Pick-Up Fuel Tank Products Liability Litig.*, 55 F.3d 768, 818-19 (3d Cir. 1995) (rejecting coupon settlement because the coupon amounted to "little more than a sales promotion" for the defendant); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 221 (D. Me. 2003) (noting that "a settlement is not fair where all the cash goes to expenses and lawyers, and the members receive only discounts of dubious value"); *Buchet v. ITT Consumer Fin. Corp.*, 845 F.Supp. 684, 696 (D.

Minn. 1994), *amended* 858 F. Supp. 944 (rejecting a proposed coupon settlement after finding that the coupon redemption rates in similar cases were so low that the certificates in the *Buchet* settlement offered no real value to the class). *Cf. In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 328 (3d Cir. 1998) ("[W]e are impressed with the nature and extent of the relief provided under the settlement. . . . Rather than offering 8 million class members a small refund or a coupon towards the purchase of other policies (which we believe would have failed the fairness evaluation), the ADR process responds to the individual claims of the class and provides compensation based on the harm they have suffered.").

Congress specifically addressed the issue of coupon settlements with the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, and 1711-1715. Before the passage of the CAFA, the Senate Judiciary Committee described coupon settlements in this way:

> [A]busive class action settlements in which plaintiffs receive promotional coupons or other nominal damages while class counsel receive large fees are all too commonplace. The risk of such abusive practices is particularly pronounced in the class action context because these suits often involve numerous plaintiffs, each of whom has only a small financial stake in the litigation. As a result, few (if any) plaintiffs closely monitor the progress of the case or settlement negotiations, and these cases become "clientless litigation," in which the plaintiff attorneys and the defendants have "powerful financial incentives" to settle the "litigation as early and as cheaply as possible, with the least publicity." These financial incentives create inequitable outcomes. For class counsel, the rewards are fees disproportionate to the effort they actually invested in the case . . . . For society, however, there are substantial costs: lost opportunities for deterrence (if class counsel settled too quickly and too cheaply), [and] wasted resources (if defendants settled simply to get rid of the lawsuit at an attractive price, rather than because the case was meritorious) . . . .

Here, not only is the defendant failing to provide any real benefit but is, in fact, using this settlement as a clever marketing tool, while conveniently extinguishing class members' claims. "Coupons serve as a form of advertising for the defendants, and their effect can be offset (in whole or in part) by raising prices during the period before the coupons expire." *In re Mexico Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001).

Settlements offering defendants' products in lieu of cash restitution have long been

criticized both in the courts, *Bloyed v. General Motors Corp*, 881 S.W.2d 422, 435 (Tex. App. 1994), aff'd 916 S.W.2d 949 (Tex. 1996), and in the press. *See* "Class Actions' Big Winners: The Lawyers," The Washington Post, May 25, 1997; "Going to the Head of the Class Action Settlement," The Washington Post, April 9, 1996; and "The Latest Class Action Scam," The Wall Street Journal, December 27, 1995, at 11. Accordingly, "in-kind compensation" is subject to higher scrutiny by the trial court and the coupons offered here should be viewed with skepticism by this Court. *See, e.g.*, *Synfuel Techs.*, 463 F. 3d at 648.

CAFA requires heightened level of scrutiny because coupon settlements are “generally disfavored” due to three common problems: (1) they often do not provide meaningful compensation to class members; (2) they often fail to disgorge ill-gotten gains from the defendant; and (3) they often require class members to do future business with the defendant in order to receive compensation. *True*, 749 F. Supp. 2d at 1069. The proposed settlement suffers from all three.

## V. ATTORNEYS’ FEES

First, greater suspicions about the adequacy of the class relief are raised to the extent the parties agreed upon a fee. The negotiation of a “clear sailing provision,” whereby defendants agree not to challenge class counsel’s request for attorneys’ fees[6], triggers heightened scrutiny of the settlement’s fairness because of the risk that class counsel may have bargained away valuable relief for the class in exchange for red carpet treatment on fees. *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

Second, the proposed attorneys’ fee is distinct from the class relief, which decouples class counsel’s interest from that of the class. Because class counsel will get paid regardless of whether class members actually submit claims, class counsel only has an incentive to create an appearance of valuable relief, so as to justify their attorney fee, but no incentive to ensure that the class actually obtains any relief. *See Polar Int’l Brokerage Group v. Reeve*, 187 F.R.D. 108, 119-20 (S.D.N.Y. 1999); *see also* Judge Thomas A. Dickerson, *Consumer Class Actions and Coupon*

[6] Amended Settlement Agreement and Release § 2.4

*Settlements: Are Consumers Being Shortchanged*?, ADVANCING THE CONSUMER INTEREST at 6 (Sept. 2000) ("Considering the low redemption rate of coupon settlements, defendants may be willing to pay inordinately high cash fees to class counsel in return for support in promoting a non-cash settlement in which the class receives near worthless coupons.").

The fee that class counsel is seeking is remarkable in light of the paltry relief the class is contemplated to receive. Consideration of fee petitions submitted by counsel representing a plaintiff class requires the utmost judicial scrutiny and discretion. Because objections by class members are rare and defendants, having made their contribution to the settlement, are uninterested in the distribution, the district court must act with moderation and a jealous regard for the rights of the class members in determining a reasonable attorney fee. *Rothfarb v. Hambrecht*, 649 F. Supp. 183, 237 (N.D. Cal. 1986).

The Ninth Circuit has repeatedly recognized that "[i]n a class action, whether attorneys' fees come from a common fund *or are otherwise paid*, the district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper." *Staton v. Boeing*, 327 F.3d 938, 964 (9th Cir. Wash. 2003) (quoting *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328 (9th Cir. 1999)). Even though fee awards must provide sufficient incentive for competent counsel to undertake class action litigation, "there also must be recognition that an element of public service is involved and that the opportunity to represent the class plaintiffs is judicially determined." *Rothfarb*, 649 F. Supp. At 199 (citing *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. at 1377).

The Court should carefully consider any award of attorneys' fees in the event this Court finds the substantive settlement to be fair, adequate, and reasonable. At a minimum, the Court should decline to award the requested 1.77 multiplier[7] in light of the *de minimis* value and illusory nature of the settlement benefit.

## VI. THE RELEASE IS OVERLY BROAD

The relief offered to class members must be commensurate with released claims,

[7] Plaintiff's Memorandum of Points & Authorities in Support of Unopposed Motion for Attorneys' Fees, Costs, Expenses, and Incentive Fees, Docket Entry 29-1, p. 14, lines 11-14

particularly in light of broad release provisions. *Molski v. Gleich*, 318 F.3d 937, 942 (2003). Accordingly, given the broad release provided by the proposed Settlement Agreement, the Court should carefully scrutinize released claims and the compensation (or lack thereof) provided to class members for releasing these claims.

## VII. THE MERE RIGHT FOR CLASS MEMBERS TO REQUEST EXCLUSION DOES NOT MITIGATE THE INADEQUATE RELIEF OFFERED TO CLASS MEMBERS

As representatives of the class, class counsel have a fiduciary duty to protect the interests of *all* class members at *all* stages of the case - but especially during settlement negotiations. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999). The opportunity to exclude oneself from the class cannot cure inadequate representation at any point. Nor does it permit a court to overlook such inadequacies when passing on the fairness of a proposed settlement. Notwithstanding the right to opt out, courts must carefully scrutinize class settlements to ensure that absent class members' rights are not lost, prejudiced, or sold out too cheaply through inadequate representation.

## VIII. ADDITIONAL OBJECTIONS

Objector hereby adopts and incorporates by reference all objections filed by other objectors in this case not adverse to the positions expressed herein.

## IX. CONCLUSION

For the foregoing reasons, Objector respectfully requests that the Court withdraw its conditional approval of the proposed settlement. Objector hereby reserves the right to amend and refine her objections as more information is made available.

Respectfully submitted this 19th day of November, 2012.

LAW OFFICE OF JOHN W. DAVIS

by: /s/ John W. Davis .
John W. Davis
Counsel for Objector
Sarah McDonald

**CERTIFICATE OF SERVICE**

**CASE NO.: 3:2011-cv-02794**

I hereby certify that on November 20, 2012, I filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day either by Notice of Electronic Filing generated by CM/ECF or by U.S. mail on all counsel of record entitled to receive service.

Date: November 20, 2012

s/ John W. Davis .
John W. Davis