1 | John W. Davis, State Bar #200113
john@johnwdavis.com
2 | LAW OFFICE OF JOHN W. DAVIS
501 W. Broadway, Suite 800
3 | San Diego, CA  92101
4 | Telephone: (619) 400-4870
Facsimile: (619) 342-7170
5 |
Attorney for Objector
6 | Sarah McDonald

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMELIA FOOS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ANN, INC., a Delaware corporation doing business as Ann Taylor Retail, Inc.,<br><br>Defendant. | CASE NO.  3:2011-cv-02794<br><br>Judge M. James Lorenz<br><br>Magistrate Judge Mitchell D. Dembin<br><br><u>CLASS ACTION</u><br><br>**CLASS MEMBER RESPONSE TO PLAINTIFF'S SUPPLEMENTAL SUBMISSION CONCERNING ATTORNEYS' FEES** |

Response to Plaintiff's Supplemental Motion for Attorneys' Fees

**TABLE OF CONTENTS**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................. 1

II. ARGUMENT ..................................................................................................................... 2

    A.    Federal Law and Practice Govern the Procedures and Evidentiary Requirements for Fee Awards ................................................................................................................................. 2

    B.    Entitlement to Attorneys' Fees ................................................................................. 3
        1.    The Enforcement of an Important Right Affecting the Public Interest ......................... 4
        2.    Significant Benefit Conferred upon a large Class of People ......................................... 5

    C.    Calculation of the Lodestar ....................................................................................... 7

    D.    Adjustment of the Lodestar ....................................................................................... 9
        1.    Novelty and Difficulty ................................................................................................ 10
        2.    Exceptional Skill or Quality of Representation ........................................................... 10
        3.    Preclusion of Other Employment ................................................................................ 13
        4.    Contingent Risk ........................................................................................................... 13
        5.    The Source of Fee Payment is Irrelevant .................................................................... 14

III. CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. Trans Union* LLC
    243 F.R.D. 377 (C.D.Cal. 2007) ............................................................................................... 6

*Baxter v. Salutary Sportsclubs, Inc.*
    122 Cal.App.4th 941 (2004) ..................................................................................................... 6

*Bell v. Vista Unified School Dist.*
    82 Cal. App. 4th 672 (2000) ..................................................................................................... 9

*Bonner v. Fuji Photo Film*
    2008 WL 410260 (N.D.Cal. 2008): .......................................................................................... 9

*Bowling v. Pfizer, Inc.*
    132 F.3d 1147 (6th Cir. 1998) ................................................................................................ 13

*Bowling v. Pfizer, Inc.*
    922 F. Supp. at 1261 (S.D.Ohio 1996) ................................................................................... 13

*Buena Vista, LLC v. New Resource Bank*
    2011 WL 250361 (N.D.Cal. 8 26 2011) ................................................................................... 2

*Carnes v. Zamani*
    488 F.3d 1057 (9th Cir. 2007) .................................................................................................. 2

*Chalmers v. City of Los Angeles*
    796 F.2d 1205 (9th Cir. 1986) .................................................................................................. 3

*Clark v. City of Los Angeles*
    803 F.2d 987(9th Cir. 1986) ................................................................................................... 13

*CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*
    479 F.3d 1099 (9th Cir. 2007) .................................................................................................. 2

*Flannery v. California Highway Patrol*
    61 Cal.App.4th 629 (1998) ....................................................................................................... 4

*Garabedian v. Los Angeles Cellular Telephone Co.*
    118 Cal.App.4th 123 (2004) ..................................................................................................... 3

*In re Larry's Apartment, L.L.C.*
    249 F.3d 832 (9th Cir.2001) ..................................................................................................... 2

*Karuk Tribe v. Water Quality Bd.*
    183 Cal.App.4th 330 (2010) ..................................................................................................... 4

*Ketchum v. Moses*
    24 Cal.4th 1122 (2001) ...................................................................................................... 9, 10

*Komarova v. Nat'l Credit Acceptance*
  175 Cal.App.4th 324 (2009) ............................................................................................ 4

*Korn v. Polo Ralph Lauren Corp.*
  644 F. Supp.2d 1212 (E.D.Cal. 2008) ............................................................................. 4

*Maria P. v. Riles*
  43 Cal.3d 1281 (1987) ..................................................................................................... 9

*MRO Communications, Inc. v. American Telephone & Telegraph Company*
  197 F.3d 1276  (9th Cir. 1999) ........................................................................................ 2

*Nichols v. City of Taft*
  155 Cal. App. 4th 1233 (2007) ........................................................................................ 9

*Party City Corp. v. Superior Court*
  169 Cal.App.4th 497 (2008) ............................................................................................ 3

*Pineda v. Williams Sonoma Stores, Inc.*
  51 Cal.4th 524 (2011) .................................................................................................. 3, 5

*Ramos v. Countrywide Home Loans*
  82 Cal. App. 4th 615 (2000) .................................................................................... 10, 13

*Reynolds v. Beneficial Nat. Bank*
  260 F. Supp.2d 680 (N.D.Ill. 2003) ............................................................................... 11

*Reynolds v. Beneficial National Bank*
  288 F.3d 277 (7th Cir. 2002) ......................................................................................... 11

*Robbins v. Alibrandi*
  127 Cal.App.4th 438 (2005) .............................................................................. 3, 10, 13

*Schmier v. Supreme Court*
  96 Cal.App.4th 873 (2002) .............................................................................................. 5

*Serrano v. Priest*
  20 Cal.3d 25 (1977) ......................................................................................................... 3

*Shabaz v. Polo Ralph Lauren Corp.*
  586 F. Supp.2d 1205 (C.D.Cal. 2008) ........................................................................ 5, 12

*Thayer v. Wells Fargo Bank*
  92 Cal.App.4th 819 (2001) .................................................................................... 4, 9, 10

*Vasquez v. California*
  45 Cal.4th 243 (2008) ...................................................................................................... 4

*Weeks v. Baker & Mckenzie*
  63 Cal. App. 4th 1128 (1998) ........................................................................................ 10

*Westside Community for Independent Living v. Obledo*
   33 Cal.3d 348 (1983) .................................................................................................... 5

*Yeager v. AT&T Mobility*
   2012 WL 6629434 (E.D.Cal. Dec. 19, 2012) ................................................................ 2

*Zucker v. Occidental Petroleum Corp.*
   192 F.3d 1323 (9th Cir. 2000) ...................................................................................... 3

**<u>Statutes</u>**

42 U.S.C. § 1988 .............................................................................................................. 13

Cal. Code Civ. Proc. § 1021.5 ....................................................................... 1, 2, 3, 4, 6, 7

Cal. Civ. Code §1717 ......................................................................................................... 2

Cal. Code Civ. Proc. § 340 .............................................................................................. 12

Cal. Civil Code § 1747.08 ............................................................................... 3, 4, 6, 10, 12

# I. INTRODUCTION AND SUMMARY OF ARGUMENT

At the order of this Court Plaintiff Amelia Foos' ("Plaintiff") has submitted additional briefing and evidence in support of Class Counsel's application for attorneys' fees.

Objector Sarah McDonald ("Objector") hereby responds to the fee application and supplemental evidence and briefing. Specifically, Objector points out that Plaintiff has not identified the theory or doctrine of fee recovery upon which Class Counsel are entitled to fees. The factors for entitlement and calculation of the fee may vary according to the theory of fee recovery used, so a fee applicant should identify that theory and analyze the fee request under the body of law applicable to it. Plaintiff has not done that, making it difficult to analyze whether the requirements for entitlement and calculation of the fee have been met.

Given the resolution of this case, entitlement to fees is not automatic, and Objector argues that Plaintiff may not even be able to establish the prerequisites for entitlement to fees under the most likely theory of fee recovery, Cal. Code Civ. Proc. §1021.5. As Objector explains, the nonpecuniary relief in the case does not support fee recovery, and the pecuniary relief can hardly be determined to be "significant" for fee award purposes without further information about the value of the vouchers offered compared to similar discounts pending during the redemption period, as well as the variety of products priced within the terms of the $15 "no purchase required" voucher. Objector also suggests that this Court defer the fee determination until February 8, 2013 close of the claims period (see footnote 2 below), so that the parties' reporting of the result may inform the issue of fee entitlement.

Assuming entitlement to fees, Objector points out that the calculation of the lodestar is hindered by Class Counsel's time reports, which are far too vague to support proper analysis. To the extent the records can be interpreted, they disclose overly-aggressive billing for routine matters. These conditions support reductions to the lodestar from that claimed by Class Counsel.

Plaintiff has not provided the proper analysis, nor much evidence, to support a multiplier on the lodestar. On the contrary, Plaintiff's description of pre-lawsuit settlement negotiations suggest a departure from acceptable practice, and the otherwise unremarkable conduct and disposition of the case do not present any reason for an enhancement. If the Court awards a fee, it

should award a reduced lodestar without any positive enhancement.

## II. ARGUMENT

**A.    Federal Law and Practice Govern the Procedures and Evidentiary Requirements for Fee Awards**

As a threshold matter, it is important to clarify the law governing the award of attorneys' fees in this case. It is correct that, in diversity cases, courts apply state substantive law on the entitlement and calculation of attorneys' fees. *See* Plaintiff's Supplemental Brief, Dkt. 46 at ECF 20. However, the doctrine is not boundless; district courts should apply only state laws that reflect a substantial policy of the state and which do not conflict with federal statutes or rules. *CRST Van Expedited, Inc. v. Werner Enterprises, Inc*., 479 F.3d 1099, 1111 (9th Cir. 2007) (state-law fee shifting statutes are substantive for *Erie* purposes if there is no direct collision with the Federal Rules. *MRO Communications, Inc. v. American Telephone & Telegraph Company*, 197 F.3d 1276, 1281 (9th Cir. 1999) (in diversity cases, district court should follow state laws on attorneys' fees that reflect a substantial policy of the state so long as state law does not run counter to a valid federal statute or rule of court). In addition, the procedures for requesting fees are supplied by federal law. *Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007) (in a diversity case, the procedure for requesting an award of attorney fees is governed by federal law) citing *In re Larry's Apartment, L.L.C.*, 249 F.3d 832, 837 38 (9th Cir.2001).

Federal law also supplies the evidentiary requirements for attorneys' fee awards in diversity cases. *Yeager v. AT&T Mobility*, 2012 WL 6629434 (E.D.Cal. Dec. 19, 2012) (Federal Rules of Evidence apply even in a diversity case, so that where plaintiff did not have personal knowledge of the services rendered by previous counsel, plaintiff's submission of  detailed invoices ... setting forth the services rendered was insufficient to meet his evidentiary burden); *Buena Vista, LLC v. New Resource Bank*, 2011 WL 250361 at *12 (N.D.Cal. 8 26 2011) (awarding fees under Cal. Civ. Code §1717 and Cal. Code Civ. Proc. §1021, but reciting federal requirement that "In calculating hours, the applicant has the burden of justifying his or her claim and must submit detailed time records for the court's consideration.") citing *Chalmers v. City of*

*Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).

**B.      Entitlement to Attorneys' Fees**

In California, as in other states and federal courts, it is presumed that parties bear their own attorneys' fees in the absence of a recognized exception. *Serrano v. Priest*, 20 Cal.3d 25, 34 (1977). The complaint filed in the case requests attorneys' fees but, notably, does not set forth a statutory or other basis for fees. Dkt. 1 (Complaint dated December 1, 2011) at ECF 8. Beyond pointing out that the defendant Ann, Inc. ("Defendant") voluntarily agreed not to oppose a fee request, and that the source of the law on fee recovery is California, Plaintiff does not identify or discuss the particular doctrine or statute that authorizes fee recovery in this case. A defendant's agreement not to oppose a fee request in a certain amount does not itself create an entitlement to fees, nor does it relieve a district court from analyzing the fee under the applicable fee-recovery doctrine. *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328 (9th Cir. 2000) ("In a class action, whether the attorneys' fees come from a common fund or are otherwise paid, the district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper"), followed in *Garabedian v. Los Angeles Cellular Telephone Co.*, 118 Cal.App.4th 123, 127-28 (2004) (fee provisions of settlement agreements do not and cannot relieve trial court of independent duty and responsibility to determine appropriate fees); *see also Robbins v. Alibrandi*, 127 Cal.App.4th 438, 451 (2005) (where the payment of attorneys' fees is also part of the negotiated settlement, the fee settlement must still be evaluated for fairness in the context of the overall settlement: "[t]he court should carefully review a negotiated fee for fairness, to ensure that it neither represents nor encourages frivolous litigation.").

Although Plaintiff has not identified a theory of fee recovery, the primary potential source for attorneys' fees in a case brought under Cal. Civil Code §1747.08 appears to be California's private-attorney general statute, Cal. Code Civ. Proc. § 1021.5. *See, e.g., Party City Corp. v. Superior Court*, 169 Cal.App.4th 497, 503 (2008) (noting that plaintiffs there sought attorneys' fees under Cal. Code Civ. Proc. § 1021.5), disapproved on other grounds, *Pineda v. Williams Sonoma Stores, Inc.* 51 Cal.4th 524, 534 (2011).

Following the language of that statute, courts apply a three-prong test in determining whether to award attorney fees under §1021.5 to the "successful party," inquiring whether: (1) the litigation resulted in the enforcement of an important right affecting the public interest, (2) a significant benefit has been conferred on the general public or a large class of individuals, and (3) the necessity and financial burden of private enforcement renders the award appropriate. Cal Code Civ. Proc. § 1021.5.

Further, California courts have consistently held that all of the requirements set forth in §1021.5 must be met to establish an entitlement to an award of fees – they are not factors that go to the amount of the fee, and it is reversible error to conflate these separate inquiries. *Vasquez v. California*, 45 Cal.4th 243, 250-51 (2008); *Komarova v. Nat'l Credit Acceptance*, 175 Cal.App.4th 324, 350 (2009) ("[w]hether an award is justified and what amount that award should be are two distinct questions, and the factors relating to each must not be intertwined or merged.") quoting *Flannery v. California Highway Patrol*, 61 Cal.App.4th 629, 647 (1998); *Thayer v. Wells Fargo Bank*, 92 Cal.App.4th 819, 838 (2001) (whether the settlement conferred a "significant benefit" on a large group of people is "relevant only to the entitlement to fees in the first instance, not to the amount of those fees.").

**1.  The Enforcement of an Important Right Affecting the Public Interest**

In determining whether a plaintiff is a successful party entitled to fees under §1021.5, the trial court "must realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right so as to justify an attorney fee award under section 1021.5." *Karuk Tribe v. Water Quality Bd.,* 183 Cal.App.4th 330, 362 (2010).

In this case, it is important to note what rights were arguably enforced, and for whom. Plaintiff did not "enforce" the right to be free of Defendant's demands for personal information under §1747.08.  Injunctive or other nonpecuniary relief was not an apparent objective of this case.  The Complaint does not seek injunctive relief (Dkt. 1 at ECF 7-8), probably because §1747.08 does not authorize private injunctive relief. *Korn v. Polo Ralph Lauren Corp.*, 644 F. Supp.2d 1212, 1219 (E.D.Cal. 2008), followed, *Shabaz v. Polo Ralph Lauren Corp.*, 586 F.

Supp.2d 1205, 1210 (C.D.Cal. 2008).

More fundamentally, there was no need to "enforce" that right because it appears to be undisputed that Defendant was not violating or threatening to violate the statute when the complaint was filed. Plaintiff alleged that she was required to provide her ZIP code in a transaction on November 15, 2010. Complaint, Dkt. 1 at ECF 4. But Defendant asserts without contradiction that it promptly ceased collecting ZIP codes in credit transactions after the decision in *Pineda v. Williams Sonoma Stores, Inc.,* 51 Cal. 4th 524 (2011), issued February 10, 2011. E.g., Dkt. 35 at ECF 27. Thus, by the time the complaint was filed on December 1, 2011, there was no conduct to change. The "injunctive" terms of the settlement essentially require Defendant to continue doing what is was already doing without compulsion before the lawsuit was filed.

The facts therefore do not support a fee award based upon the nonpecuniary or injunctive terms of the settlement. *Westside Community for Independent Living v. Obledo*, 33 Cal.3d 348, 354-55 (1983) (reversing award of attorneys' fees because there was no evidence that lawsuit had any effect upon defendant's subsequent actions, and therefore no reasonable basis for the trial court's contrary conclusion); *Schmier v. Supreme Court*, 96 Cal.App.4th 873, 877-878 (2002) (plaintiff's lawsuit must be "a catalyst motivating defendants to provide the primary relief sought" or plaintiff must vindicate an important right by "activating defendants to modify their behavior.");

On the other hand, by obtaining Defendant's agreement to issue vouchers to customers who had their ZIP codes taken, Plaintiff arguably enforced the right to *statutory compensation* for alleged violations of §1747.08 that had happened in the past. Plaintiff has not discussed whether this amounts to the enforcement of an "important right" but, assuming that it is, there remains significant doubt whether the benefit obtained is sufficiently significant, as required by the subsequent factor.

**2.    Significant Benefit Conferred upon a large Class of People**

As with the prior "enforcement" factor, the nonpecuniary features of the settlement cannot serve as a "significant benefit" for the purposes of entitlement to a fee award. Plaintiff nevertheless characterizes the injunctive relief as a "substantial benefit" conferred on the class,

asserting that:

> The settlement ensures that future customers who engage in a credit card transaction at any of Defendant's California retail stores will not be requested to provide personal identification information and have it recorded in conjunction with that transaction.

Dkt. 46 at ECF 25.

First, the settlement does not ensure that at all. The injunction permits Ann, Inc. to adjust its policies, without notice, to collect the maximum information permitted under prevailing law.[1] If the law is ultimately construed or amended to permit the collection of collect ZIP code or other information, Ann Inc. may do so without hindrance. This is not, in other words, an injunction that can only be modified by a court, by which Defendant agrees to forego doing something that it is otherwise arguably permitted to do, to the benefit of is customers. Courts do not ascribe value to injunctions that require defendants to do merely what the law already requires. *Acosta v. Trans Union* LLC, 243 F.R.D. 377, 395-396 (C.D.Cal. 2007) (collecting cases). Compare *Baxter v. Salutary Sportsclubs, Inc.*, 122 Cal.App.4th 941, 948 (2004) (in affirming trial court's denial of attorney fees to successful plaintiff who obtained modest relief in UCL action to ensure health club membership contracts conform with statutory requirements, the Court of Appeal confirmed that the lawsuit provided no significant benefit because it involved "minor deficiencies" and a "minuscule benefit.")

Plaintiff would surely argue that the voucher relief in this case constitutes a significant pecuniary benefit conferred upon a large class of persons for the purposes of §1021.5. Yet there is considerable doubt as to the practical value of the vouchers. Objector previously submitted, in

---

[1] *See* Settlement Agreement, ¶ 2.1 (Dkt. 24-2 at ECF 9):

> Change in Practice. Ann Inc. agrees to comply with California Civil Code section 1747.08 on or before entry of the Preliminary Approval Order. Ann Inc.'s change in policies, practices, and procedures after the onset of the Action and before entry of the Preliminary Approval Order shall in no way expand or restrict the scope of California Civil Code section 1747.08, and is subject to any changes in California law (either by statutory amendment or appellate court opinion). This Settlement Agreement shall in no way require Ann Inc. to notify Plaintiff or Plaintiff's Counsel of any changes to its policies, practices, and procedures as a result of this Settlement Agreement or in the future.

opposition to final approval, evidence that Ann, Inc. routinely sends coupons to credit card customers. Dkt. 32-1.  In the interim, Ann, Inc. has sent additional coupons, which Objector submits with this brief.  *See* Declaration of Sarah McDonald Re: Response to Plaintiff's Supplemental Submission Concerning Attorneys' Fees, filed herewith, at ¶ 5.  Although the settlement's voucher may differ in particular terms, such as its redemption period, it comes amidst a steady flow of similar benefits offered by Defendant for marketing purposes, and which do not come at the expense of a broad release of legal claims.

Further, the range of items that could be obtained at no charge, i.e., for the $15 voucher, was a fundamental premise of the value of the vouchers. Dkt. 35 at 21-22.  "There are items valued under $15 in Ann Inc. stores that a settlement class member may obtain. (See, e.g., Declaration of Ehab Ismail, Ex. A; Declaration of Karen Walter, Ex. A; Declaration of Emily Rompala, Ex. A; Declaration of Charlene Mady, Ex. A.)"  However, Objector submits further evidence that casts doubt on the currency of the information previously provided – specifically, it appears that the range of items available for under $15 presently does not approach the number and range of items previously identified by Defendant.  *See* McDonald Decl. filed herewith at ¶ 7.

Accordingly, whether the vouchers offered constitute a "significant" benefit conferred on a large class for the purposes of §1021.5 is questionable, and should not be merely assumed by virtue of the settlement's approval as fair and adequate.  It is dependent upon current and accurate information about (1) the frequency and terms of similar offers pending during the redemption period and (2) the availability of products within the price of the voucher.  In addition, given that the claims redemption period will be ended on February 8, 2013[2], this Court might reasonably defer ruling on the fee to permit the parties to report the number of claims submitted, which might illuminate the significance of the benefit conferred.  That is, a sufficient number of valid claims might provide evidence of a significant benefit from the perspective of the class.

## C.      Calculation of the Lodestar

Assuming entitlement to fees, Objector concurs that the proper method of determining the amount of fees in this case is the lodestar method.   This Court required Class Counsel to submit

---

[2] Notice to Class Members, p.2; www.foossettlement.com; *see also* Dkt. 28 at ECF 2:16-19

additional support for their lodestar calculation including, *inter alia*, billing documentation.  The time entries Class Counsel supplied in response are vague and cryptic.  Almost all of the entries comprise the phrase "correspondence with" followed by either "defense counsel," "co-counsel," or sometimes "client."   These entries contain no further information about the nature or topic of the correspondence.   The remaining entries are only marginally more specific, providing at best the bare minimum information necessary to identify the subject of the billing.  Consequently, for most of Class Counsel's time, it is difficult or impossible to ascertain the particular subject matter or issue addressed by the work claimed.

To the extent they can be understood, however, the time entries suggest aggressive billing for quasi-administrative tasks, as well as surprisingly high billing for preparing case documents that were mostly boilerplate and which did not require much original work.  For example, attorney Todd C. Atkins billed five hours on April 9, 2012 "Reviewing and Executing Pro Hac Vice Application."   Dkt. 46-2 at ECF 46.  The preparation and submission of a *pro hac vice* application typically requires mostly administrative and clerical work, and not nearly so much as was billed here by an attorney for "reviewing and executing" it.  Without some explanation, this time entry should not be credited.   Similarly, Class Counsel collectively billed a total of 13.7 hours researching, drafting, and editing the complaint in this case.   But the complaint is only eight pages, contains a single count, and perhaps a page or two of allegations unique to this case.  Dkt. 1.  Given the other entries and argument regarding contact with the client and defense counsel prior to filing – which presumably provided content for the non-boilerplate portions of the complaint -- the amount of additional time claimed for preparing the complaint is inexplicable.

Further, Mr. Siprut's records contain two 24-hour 'block-billed" entries, each covering two days, to travel to and attend the preliminary and final approval hearings in this case.  *See* Dkt. 46-2 at ECF 44 (July 22-23, 2012 entry) and ECF 45 (December 9-10, 2012 entry).  But the time consumed by those hearings, including travel time to and from Chicago, does not remotely approach the 48 hours billed for it.  Without further explanation not provided in the time entries, these appear to be examples of patent overbilling.

Time records that are too vague to be interpreted or audited, or which are "block-billed" so that the allocation of time among tasks is obscured, may be reduced by a reasonable percentage or "simply cast aside."  *See Bonner v. Fuji Photo Film*, No. 2008 WL 410260 at *3 (N.D.Cal. 2008):

> The California State Bar's Committee on Mandatory Fee Arbitration has concluded that block billing "hides accountability" and "may increase time by 10% to 30%." See The State Bar of California Committee on Mandatory Fee Arbitration, Arbitration Advisory 03 01 (2003). California courts have held that although block billing is not prohibited outright, the trial court may "exercise its discretion in assigning a reasonable percentage to the entries, or simply cast them aside."

*Id*. at *3, quoting *Bell v. Vista Unified School Dist.*, 82 Cal. App. 4th 672, 689 (2000).  The court in *Bonner* citing block billing and vague billing entries, made large, cumulative percentage reductions of between 10-40% in the lodestar of the lawyers in that case.

### D.     Adjustment of the Lodestar

As Plaintiff indicates, the lodestar figure may be adjusted based on consideration of factors specific to the case, such as: (1) the novelty and difficulty of the questions involved; (2) the skill displayed in presenting them; (3) the extent to which the nature of the litigation precluded other employment by the attorneys; and (4) the contingent nature of the fee award.  *Nichols v. City of Taft*, 155 Cal. App. 4th 1233, 1240 (2007).   The party seeking a fee enhancement bears the burden of proof on these factors, and the "the trial court is not required to include a fee enhancement…. although it retains discretion to do so in the appropriate case...." *Ketchum v. Moses*, 24 Cal.4th 1122, 1138 (2001).  In addition, the lodestar may be adjusted downward in an appropriate case.  *Thayer v. Wells Fargo Bank*, 92 Cal.App.4th 819, 840 (2001) ("[O]ur Supreme Court has repeatedly observed that a lodestar figure may be adjusted not just upward but also, where appropriate, downward.") citing *Maria P. v. Riles*, 43 Cal.3d 1281, 1294 (1987).

Here, Class Counsel seek a 1.4 multiplier.  However, as explained below, Plaintiff has not met the burden of demonstrating entitlement to a positive multiplier under the relevant factors.

### 1. Novelty and Difficulty

This case presents a straightforward, run-of-the-mill action under §1747.08, undoubtedly very similar to the other such cases Class Counsel have litigated under the statute. It settled soon after its filing. Discovery was wholly informal, and apparently consisted of ascertaining the number of customers who were asked to provide ZIP codes during the relevant period. *See* Plaintiff's Supplemental Memorandum of Points & Authorities in Support of Unopposed Motion for Attorneys' Fees, Costs, and Expenses, Dkt. 46 at ECF 8:17-23, 24:1-7. The litigation was not facially novel or difficult, and Plaintiff has not indicated any facts that contravene that presumption, so this factor does not support a positive enhancement to the lodestar.

### 2. Exceptional Skill or Quality of Representation

The California Supreme Court has held that trial courts should award multipliers for exceptional representation "only when the quality of representation far exceeds the quality of representation that would have been provided by an attorney of comparable skill and experience billing at the hourly rate used in the lodestar calculation." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1139 (2001); accord *Thayer v. Wells Fargo Bank, N.A*., 92 Cal.App.4th 819, 835 (2001); *Ramos v. Countrywide Home Loans*, 82 Cal. App. 4th 615, 621 (2000) (multiplier resulting in some counsel being paid approximately $800 per hour is not allowed except in "truly pioneering and high risk cases.").

It is also error to augment the fee in recognition of a skillful and excellent result when the requisite skill and excellence are already accounted for by hourly rates. *Ketchum*, 24 Cal. 4th at 1138-39; *Weeks v. Baker & Mckenzie*, 63 Cal. App. 4th 1128, 1176 (1998) ("As to the skill of the attorneys in litigating the case, that factor necessarily is reflected in the lodestar figure."); *Robbins*, 127 Cal.App.4th at 454 (noting that attorneys' high hourly rates already reflected the "market rate" for excellent work and observing that, in any event, "[I]t appears that the majority of the hours billed were spent on sifting through records for evidence to support plaintiffs' theory of liability.").

Plaintiff's discussion of exceptional representation focuses on the brevity of the litigation –

"the time Class Counsel chose *not* to expend." *See* Plaintiff's Supplemental Memorandum of Points & Authorities in Support of Unopposed Motion for Attorneys' Fees, Costs, and Expenses, Dkt. 46 at ECF 24:1-9.   Plaintiff extols the value of rapid settlement, by which counsel assertedly refrained from running-up the lodestar in continued litigation on the merits.  That argument only goes so far, however, before it starts to beg the question.  On one side of the spectrum, a  rapid settlement may represent a commonsense and accurate estimation that further litigation will likely not result in greater benefit; on the other extreme, it may represent a self-serving and uninformed guess that a bird in hand is better than expending additional time determining how many birds are in the bush.

Most troubling, however, is Plaintiff's belief that pre-filing settlement negotiations demonstrated excellence and skill.  "Months before this case was filed, Plaintiff's Counsel reached out to counsel for Ann Taylor and engaged in preliminary negotiations, and exchanged informal discovery." Dkt. 46 at ECF 8; *see also* Dkt. 24-2 at ECF 2, 3 (averring that Class Counsel and defendant had "extensive" settlement negotiations "[e]ven before this case was filed....").

In class actions, pre-filing settlement negotiations are cause for concern, not congratulations.  *See Reynolds v. Beneficial Nat. Bank*, 260 F. Supp.2d 680 (N.D.Ill. 2003).  In that case, the district court addressed on remand the "Seventh Circuit's tentative conclusion of inadequacy" leading to the reversal of settlement approval in *Reynolds v. Beneficial National Bank*, 288 F.3d 277 (7th Cir. 2002) which included:

> a lack of discovery, the fact that various classes were included in the settlement that did not seem appropriate, the inclusion of Block, who was not even a defendant, without additional compensation to the class, and various actions, particularly a meeting between certain counsel for plaintiffs and counsel for defendants, several months before the suits were filed.

*Reynolds*, 260 F.Supp. at 683.  Discussing the pre-lawsuit meeting, the district court found "particularly important" that "counsel for plaintiffs, months before they filed a case, and without in some cases even clients to represent, indicated their interest in an early settlement." *Id.* at 684 (footnote omitted).  The district court declined to approve the settlement, and disqualified the

counsel involved from continuing to represent the class. *Id*. at 695.

In a traditional dispute, there may be value and leverage for parties in conducting pre-filing negotiation, such as the potential for a confidential resolution that avoiding a public airing of the dispute in court.  But class actions cannot be resolved that way, so there is little legitimate reason to defer the initial filing of a class complaint to permit ongoing settlement negotiations with the potential defendant.  On the contrary, the only obvious reason to defer filing is to avoid the automatic duties to absent class members that arise when the case is filed as a class action, including the requirement that the case cannot be dismissed without court approval.  This raises the possibility of an individual resolution, at a premium, that would derail the threatened class litigation before it reached a public forum.

Meanwhile, deferring filing of the initial complaint permits the statute of limitations (which in this case is only one year) to run unabated.  *Shabaz v. Polo Ralph Lauren Corp*., 586 F. Supp.2d 1205, 1211 (C.D.Cal. 8 25 2008) (granting motion to strike, explaining that "[T]he one year statute of limitations under Cal. Code Civ. Proc. § 340 applies, and allegations of conduct unlawful under § 1747.08 occurring outside of the one year statute of limitations should be stricken.").  Deferring filing also defers (or at least muddies determination of) the date at which the defendant's unequivocal duty to preserve evidence arises.  These risks hardly seem worth the dubious additional cooperation that one might get from a defendant who has been threatened but not yet sued.

Turning to the settlement itself, the parties' vague description of the vouchers to be issued and the conditions that would attend them drew a valid objection from Objector, as well as the attention of this Court, resulting in this Court questioning the settling parties as to what the terms of the vouchers would actually be.  Transcript of December 10, 2012 Final Approval hearing at 6:6-9 (Dkt. 52-2, ECF 8).  Ordinarily, a settlement arrived at through vigorous negotiation and careful drafting not be so facially vague as to require a district court to question the particulars of the central relief offered in the case.  Then again, the settlement may not have been negotiated or drafted all that vigorously.  Class Counsel claim only a total of 11.1 hours communicating with Ann, Inc.'s counsel. Dkt. 46 2 at ECF 41.   That amount of time – which presumably includes not

only settlement discussions but also routine case communications – seems low in relation to the remainder of the lodestar, and does not suggest a particularly thorough exploration of the claims that have been resolved in the settlement, nor overmuch attention to the terms upon which they were resolved.  For all of these reasons, there is no support for an enhancement to the lodestar in this case for exceptional skill.

### 3. Preclusion of Other Employment

Regarding the preclusion of other employment, Plaintiff only makes an oblique reference to "refusal of alternative employment opportunities with guaranteed payment."  Dkt. 29-2 ¶ 7. (Siprut Declaration).   Such a conclusory statement is insufficient to support an enhancement for preclusion of other employment. *Robbins v. Alibrandi*, 127 Cal.App.4th 438, 454 (2005) ("axiomatic" conclusion that time spent working on a case precludes work on other cases is insufficient to support a multiplier); *Ramos v. Countrywide Home Loans*, 82 Cal. App. 4th 615, 626 27 (2000) (remanding for more explicit findings on relationship between evidence of preclusion of employment and enhancement figure chosen).   Therefore, this factor does not support an enhancement to the lodestar.

### 4. Contingent Risk

This case, limited as it was in scope and purpose, does not present unusual risk justifying a multiplier.  Although the settlement agreement in the case was executed on May 21, 2012, about six months after the filing of the lawsuit, the parties appear to have reached agreement in principle some time before. *E.g.*, Dkt. 46-2 at ECF 47 (April 15, 2012 time entry of Aleksandra M.S. Vold re: "Researching: Preliminary Approval Motion").   Regardless, most of the work done in this case was done after the parties had reached agreement in principle on the proposed settlement.  Such time is not considered to be "at risk." *Bowling v. Pfizer, Inc*., 132 F.3d 1147 (6th Cir. 1998) ("Regarding contingency, this case has settled so there is no risk.") citing *Bowling v. Pfizer, Inc*., 922 F. Supp. at 1261, 1282 (S.D.Ohio 1996); *Clark v. City of Los Angeles,* 803 F.2d 987, 992 (9th Cir. 1986) (42 U.S.C. §1988 case) (risk and delay are greatly diminished at fee-petition stage, and where no other factor exists for awarding multiplier on fee petition work it is an abuse of discretion to award a multiplier on that time).

### 5. The Source of Fee Payment is Irrelevant

Plaintiff makes much of the act that the fee award will not reduce any class member's recovery. *See* Dkt. 46 at ECF 9 ("Most importantly, the requested fees and costs will be paid out separately from any benefits paid to the Class; under no circumstances will any of the proposed fees and costs diminish the payout to the Class."). This argument is nothing but an attempt to make a virtue of necessity – the source of the fee does not influence the multiplier one way or the other. It is indeed difficult to imagine a settlement involving only coupons and injunctive relief in which a fee award could reduce the class' recovery, unless the counsel were being paid with coupons that would otherwise be used by class members. As Plaintiff points out elsewhere, if the settlement went forward without an agreement on fees it would be Defendant, and not the class, from whom Plaintiff would have sought payment of fees. Dkt. 46 at ECF 26. Where settlement would grant prevailing party status and render a defendant liable for fees, the fact that the defendant and not the class will be paying the fee is axiomatic. It is certainly not an "unusual circumstance" considered in adjusting the lodestar upwards with a multiplier.

## III. CONCLUSION

Assuming, *arguendo*, Plaintiff could make out a *prima facie* case for entitlement to fees, the fee requested here is excessive under the circumstances. To the extent it can be accurately measured at all, Plaintiff's success was modest. The documentation of the hours expended is scant, and what can be determined suggests some degree of overbilling. This should be addressed by a reduction in the claimed lodestar. The positive enhancement sought is likewise excessive under the circumstances.

Respectfully submitted this 28th day of January, 2013

**LAW OFFICE OF JOHN W. DAVIS**

by:  s/ John W. Davis
      John W. Davis